

FILED

2010 NOV 17  AM 11: 26

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LEE MEDWAY,<br><br>                        Petitioner,<br><br>vs.<br><br>MATTHEW CATE,<br><br>                    Respondent. | CASE NO. 10-cv-0276 BEN (BLM)<br><br>ORDER DENYING PETITION FOR<br>WRIT OF HABEAS CORPUS |

Petitioner, an inmate at Centinela State Prison, filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). On September 16, 2010, Magistrate Judge Barbara Major submitted a Report and Recommendation recommending that this Court enter an order: (1) granting the Petition; (2) releasing the Petitioner immediately; and (3) directing that Petitioner's parole term be reduced and Petitioner receive term credit. Respondent filed an objection to the Report and Recommendation, and Petitioner filed a reply. (Docket Nos. 17, 19.) The merits of the Petition are now before this Court.

For the reasons set forth below, the Court adopts in part the Report and Recommendation and DENIES the Petition.

## BACKGROUND

In 1977, Petitioner was convicted by a jury of first-degree murder and other felonies and was sentenced to a prison term of seven years to life. This habeas petition does not challenge Petitioner's

1  conviction, but rather challenges a decision by the Board of Parole Hearings ("Board") on November
2  24, 2008 that found Petitioner unsuitable for parole. (Tr. 1; Lodgment 7.) The 2008 hearing was
3  Petitioner's fifteenth parole hearing and was conducted after the Governor of California reversed a
4  prior grant of parole. Prior to filing the Petition, Petitioner sought habeas relief at all three state court
5  levels, but without success. (Lodgment Nos. 2, 4, 6.) While Petitioner was pursuing his state
6  collateral relief, the Board held another parole hearing. (Lodgment 8.) However, the Board again
7  denied parole. *Id.*

8  **I. COMMITMENT OFFENSE**

9      The facts cited herein are largely undisputed and were obtained from the transcript of the 2008
10 parole hearing and the record in this case:

11     In May 1977, a 33-year old homeless man knocked on Petitioner's door and asked for a glass
12 of water. Petitioner invited the man inside. Soon thereafter, Petitioner accused the man of pulling a
13 knife on Petitioner's friend some months earlier. Over the next several hours, Petitioner and other
14 individuals repeatedly beat and kicked the man, stripped him of his clothes, urinated into his open
15 mouth, and forced him to drink urine from a bath. The participants also attempted to hang the man
16 in the bathroom with a belt and smother him with a towel. On at least three separate occasions, the
17 participants told the man they were going to kill him, pointed a gun at his face, and pulled the trigger.
18 However, on each occasion, the gun was empty. These events occurred at various times throughout
19 the evening, interspersed by breaks where the participants drank wine and beer and sniffed paint.

20     The participants then became concerned that the man would turn them into the police. At
21 midnight, the participants carried the man to a vacant lot and placed him under a trailer, where they
22 shot him first in the head, then in the neck, and then in the stomach. The participants returned to the
23 apartment, disposed of the man's belongings, and cleaned up the blood. An autopsy showed that the
24 victim had been severely beaten prior to his death and that his death was due to a bullet wound behind
25 his left ear. Among other injuries, the victim had six fractured ribs on the left and two on the right,
26 a fractured skull, two broken cheekbones, and a broken nose and jaw. There were also abrasions and
27 lacerations.

28     On December 1, 1977, Petitioner was convicted by a jury of first-degree murder and other

10cv0276

1  felonies.  He was sentenced to an indeterminate prison term of seven years to life.  At the time of the

2  offense, Petitioner was twenty-three years old.  (Lodgment 9.)

3  **II. PREVIOUS CRIMINAL HISTORY**

4  Petitioner's prior criminal history includes convictions in March 1974, July 1974, August 1975

5  and July 1976.  (Pet., Ex. G; Lodgment 5, p. 5-6; Lodgment 7, p. 34-36.)  In March 1974, Petitioner was

6  convicted of being a minor in possession of alcohol.  In July 1974, Petitioner was convicted of

7  prowling.  In August 1975, Petitioner was convicted of being under the influence of narcotics and

8  resisting arrest.  And, in July 1976, Petitioner was convicted of entering without consent.  Each of these

9  offenses resulted in a misdemeanor conviction and a prison sentence or probation.  *Id.*  Petitioner

10  emphasizes that these convictions were for non-violent offenses.  (Lodgment 5, p. 5-6.)  The record

11  shows Petitioner has also been arrested for several other offenses, including burglary, robbery, and theft.

12  (Lodgment 7, p. 34-36, 111-12.)

13  **III.    PRISON RECORD**

14  During the first thirteen years of Petitioner's prison term, Petitioner received three serious rule

15  violations and several misconduct reports.  (Lodgment 7, p. 49.)  Since then, however, Petitioner's

16  conduct has been "consist [sic] in positive institutional behavior."  *Id.*  Among other things, while

17  incarcerated, Petitioner earned trade certifications for janitorial services, dry-cleaning, and mill and

18  cabinetry work.  (Lodgment 7, p. 50.)  He also participated in self-help and therapy programs, including

19  Alcoholics Anonymous, Narcotics Anonymous and Anger Management.  *Id.*  Petitioner has received

20  multiple laudatory reports from various institutional staff as well as favorable psychological work and

21  counselor evaluations.  (Lodgment 7, 9.)

22  **DISCUSSION**

23  **I.  "SOME EVIDENCE" STANDARD**

24  The Court may entertain a petition for writ of habeas corpus by a state prisoner "only on the

25  ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

26  28 U.S.C. § 2254(a).  The Ninth Circuit has consistently recognized that a state prisoner possesses a

27  federal liberty interest if parole is denied in the absence of "some evidence" that the prisoner is

28  currently dangerous.  *Hayward v. Marshall*, 603 F.3d 546, 562 (9th Cir. 2010); *see also Pearson v.*

1   *Muntz*, 606 F.3d 606, 608-09 (9th Cir. 2010). In reviewing a habeas petition, the Court must "decide

2   whether the California judicial decision approving the [Board]'s decision rejecting parole was an

3   'unreasonable application' of the California 'some evidence' requirement, or was 'based on an

4   unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63

5   (quoting 28 U.S.C. § 2254(d)(1)-(2)); *Pearson*, 606 F.3d at 608. Contrary to Respondent's Objection,

6   and as concluded in the Report and Recommendation, this Court is not limited to merely evaluating the

7   parole review procedures utilized by the state to ensure fairness. (Report, p. 6-11.) *Id.*

8      **II. APPLICATION OF STANDARD**

9         Where, as here, there is no reasoned decision from the state's highest court, the Court looks

10  through to the last reasoned decision of the state court denying relief to the petitioner. *Ylst v.*

11  *Nunnemaker*, 501 U.S. 797, 803-04 (1991). In this case, the last reasoned state court decision is the San

12  Bernardino County Superior Court's order dated October 14, 2009, finding that "some evidence"

13  supported the Board's parole denial. (Lodgment 2; *compare with* Lodgment 4, 6.) Although the court

14  suggested that Petitioner's failure to fully accept responsibility for his crime, as well as the nature of

15  Petitioner's offense and his pre- and post-incarceration history provided "some evidence" supporting

16  the Board's decision, the court did not clearly explain which of the Board's findings supported the

17  denial of parole. (Lodgment 2.) Instead, as the Report and Recommendation notes, the court appeared

18  to largely defer to the Board's judgment. *Id.* Accordingly, just as the Magistrate Judge did, this Court

19  examines the Board's reasons for denying parole in order to evaluate the reasonableness of the superior

20  court's decision. *Cooke v. Solis*, 606 F.3d 1206, 1214 (9th Cir. 2010). Having conducted a de novo

21  review, the Court agrees with the Magistrate Judge's conclusion that Section 2254(d)(2) applies and

22  rejects Respondent's arguments to the contrary. However, after reviewing the record, this Court

23  concludes there is "some evidence" of current dangerousness such that habeas relief is not warranted.

24         State parole regulations apply in determining whether an inmate poses an unreasonable risk of

25  danger to public safety. These regulations enumerate factors tending to show suitability for parole, as

26  well as unsuitability for parole. Cal. Code Regs., tit. 15 § 2281(c)-(d). "While the regulatory factors

27  are designed to guide the Board's decision, the ultimate question of parole suitability remains whether

28  the inmate poses a threat to public safety. There must be some evidence of such a threat, and not

- 4 -

1   merely evidence that supports one or more of the Board's subsidiary findings." *Pirtle v. California Bd.*

2   *of Prison Terms*, 611 F.3d 1015, 1021 (9th Cir. 2010) (quotation marks omitted) (citing *Hayward*, 603

3   F.3d at 562). After applying the parole factors, the Board denied parole on the following grounds: (1)

4   Petitioner's bad attitude and failure to meaningfully participate in rehabilitation programs since 2003;

5   (2) the heinous nature of the commitment offense; (3) Petitioner's failure to accept full responsibility

6   for the crime or show full insight or remorse; (4) Petitioner's inadequate parole plans; (5) Petitioner's

7   unstable social history and prior criminal history; and (6) the opposition to release. (Traverse, p. 6;

8   Lodgment 7, p. 109-124.) Cal. Code Reg., tit. 15 § 2281(b).

9        First, the Board found that Petitioner exhibited a bad attitude and insistence on doing things his

10  way, as evidenced in part by his failure to meaningfully participate in rehabilitation programs since

11  2003. (Lodgment 7, p. 115.) At the parole hearing, Petitioner stated he last attended the prison's

12  rehabilitation programs, in particular Alcoholics Anonymous, in 2003. (Lodgment 7, p. 41-42, 57-61.)

13  Petitioner explained that he no longer attends the therapy programs because he (1) has already

14  completed them; (2) is busy with his prison job; and (3) is busy litigating the Governor's 2004 decision

15  to reverse Petitioner's 2003 parole grant. *Id.* Petitioner further stated that, although he no longer attends

16  the programs, he participates in them via self-study. *Id.* When requested by the Board, however,

17  Petitioner was unable to produce a book report or other documentation evidencing his self-study.[1] (*Id.*,

18  p. 41-43.)

19       The Board found Petitioner's diminished involvement in the programs troublesome and

20  indicative of potential problems that Petitioner may have in developing relationships, dealing with

21  people, and interacting with others outside of prison. (Lodgment 7, p. 59, 60-61, 115.) This finding

22  is also supported by other evidence in the record. For example, Petitioner's 2008 psychological

23  evaluation indicates that, based on events occurring prior to the commitment offense and

24  incarceration, Petitioner exhibited a "blatant disregard" for others and Petitioner could have

25  problems dealing with negative criticism if released on parole. (Lodgment 9, p. 11, 14.)

26  Furthermore, Petitioner's participation in the commitment offense appeared to be based, in part, on

27

28       [1] Although Petitioner produced a letter that he wrote as part of the 12-step program, it is unclear
    when he wrote the letter and, when questioned, Petitioner was unable to accurately recount its
    contents. *Id.*

1  peer pressure and the need to be accepted by the other participants. (Lodgment 9, p. 9.) The record

2  further indicates that, while in prison, Petitioner received citations for unexcused absences and

3  hiding during the count, which further show Petitioner may have difficulty dealing with authority

4  and people outside of prison. (Lodgment 7, p. 40.) Indeed, it appears that Petitioner stopped

5  attending the rehabilitation programs around the time the Governor reversed Petitioner's parole

6  grant and Petitioner has made little if any attempt since then to remedy the concerns raised by the

7  Governor. (Lodgment 7, p. 121-24.) These circumstances further evidence spitefulness and

8  difficulty handling criticism and setbacks. (Lodgment 7, p. 121-24.) The Board noted these

9  circumstances still existed in October 2009, when it again denied parole. (Lodgment 8, p. 6, 10.)

10      One could argue, however, that merely a bad attitude and potential difficulty in dealing with

11  others is not sufficient to show that Petitioner poses an unreasonable risk of danger to society. This is

12  especially true where, as detailed in the Report and Recommendation, there is clearly evidence in the

13  record showing that Petitioner may be suitable for parole.   However, this Court's role is limited to

14  assessing the reasonableness of the Board's parole determination in 2008, not deciding on its own

15  whether Petitioner is entitled to parole. *Powell v. Gomez*, 33 F.3d 39, 42 (9th Cir. 1994) ("This court

16  cannot reweigh the evidence, but looks only to see if 'some evidence' supports the [Board's]

17  decision."); *In re Lawrence*, 44 Cal. 4th 1181, 1191 (2008) (noting the "some evidence" standard is

18  extremely deferential and a federal habeas court may not substitute its own judgment for the Board's

19  merely because it would weigh the evidence differently). In this regard, all factors must be weighed:

20  "Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to

21  a pattern which results in a finding of unsuitability." Cal. Code Regs., tit. 15 § 2281(b). Keeping this

22  in mind, the Court notes that Petitioner's prior criminal history includes arrests and, in some instances

23  convictions, for robbery, burgl ary, drugs, trespassing, prowling, and receiving stolen property.

24  (Lodgment 7, p. 34-36, 111-12.) In fact, Petitioner was on probation when he committed the

25  commitment offense. *Id.* Although these offenses were non-violent, they were numerous and show

26  that, despite receiving prison time and probation, Petitioner was not deterred from future criminal

27  conduct.  The record also shows that Petitioner had no justifying motivation for the commitment

28  offense. (Lodgment 9, p. 9.) Cal. Code Regs., tit. 15 § 2281(d)(4). Petitioner was the eldest of the

1  participants (most of whom were juveniles), Petitioner did not know the victim, and the victim did not

2  pose an immediate threat to Petitioner or any other participants. (Lodgment 7, p. 53; Lodgment 9.)

3       In light of the above, the Court finds that the record provides "some evidence" of the Board's

4  determination that Petitioner presented a current danger to society and, therefore, should not be granted

5  parole. The "some evidence" standard is minimal and assures only that the record is not so devoid of

6  evidence that the denial of parole was arbitrary. *See Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123,

7  1129 (9th Cir. 2006), *overruled in part on other grounds, Hayward*, 603 F.3d at 555. The standard

8  requires only a "modicum of evidence" of unsuitability for parole. *In re Lazor*, 172 Cal. App. 4th 1185,

9  1198 (2009) (quoting *Lawrence*, 44 Cal. 4th at 1191, n. 2). The Board cited other factors for denying

10  parole, including the commitment offense, the lack of acceptance of responsibility or remorse,

11  inadequate parole plans, unstable social history and opposition to release. However, for the same

12  reasons stated in the Report and Recommendation, which are incorporated herein by this reference, the

13  Court finds the record void of "some evidence" supporting these other findings. Nonetheless, given

14  the standard that applies here, the Court finds that Petitioner's attitude, lack of participation in

15  rehabilitation programs, prior criminal history and lack of motivation in committing the commitment

16  offense, when taken as a whole, evidenced current dangerousness to society. Accordingly, the Court

17  finds the Superior Court's order dated October 14, 2009 was not an unreasonable application of the

18  "some evidence" standard nor was it an unreasonable determination of the facts in light of the evidence.

19       **CONCLUSION**

20       In light of the above, the Court DENIES Petitioner's petition for writ of habeas corpus.

21  **IT IS SO ORDERED.**

22  Date: November 15, 2010

23       Hon. Roger T. Benitez

     United States District Court Judge

24

25

26

27

28